v. Scott Jacobson v. James Montgomery Both sides ready to proceed? Yes, Your Honor. You may proceed when you are ready. Thank you, Your Honor. Madam Prosecutor Justice, and may it please the Court, I believe this case presents a very narrow and straightforward issue and compels this Court to reverse the trial court's decision. Namely, the trial court on the defendant's motion to dismiss does not have the authority to reduce the charge without the state's acquiescence. Here, the state didn't have much of an opportunity to even consider what was going on in the case. On the defendant's motion to dismiss the charge, the trial court granted it in part, denied it in part, took out a pen, and changed the face of the charge and instrument. We would submit that that in and of itself is incorrect, an improper procedure, and we would ask this Court to reverse on that basis alone. Is the case over at that point? Is our position in this case over at that point? To simply reverse on a motion to dismiss? It's certainly possible that the Court could just do that. I think, however, this case presents an excellent opportunity for this Court to reconsider the merits of people versus heritage. I'm sorry, I didn't mean to include you. Why should we go forward? Why should we go beyond simply answering the question on appeal, which is whether or not the trial court abused his or her discretion in the ruling on the defendant's motion to dismiss? Well, I mean, in all candor, Your Honor, I think that's entirely dependent on how this Court sees itself. I mean, if this Court sees itself as a court that is confined to the narrowest possible grounds, then that's certainly possible. But if this Court sees itself as an error correction court, I mean, not just error in the record, but in all senses of the word error, legal errors, analytical errors, logical errors, correcting prior precedents, I think it's incumbent upon this Court to take... Are you asking us to overrule a prior decision? I am. This Court? Yes. And on what authority do we have to overrule? I'm sorry, to overrule, but at least to abrogate. I don't think we have the authority to do that. Do we have the power to abrogate another decision, or could we, if we thought that decision was an error, issue our own opinion? We don't have the authority to abrogate another panel's decision, do we? I believe you do. It applies to a case that says that? Off the top of my head, I can think of Schramer v. Tiger. Tiger associates the... Did the Illinois Supreme Court say in the in regroupment that a panel of a court of a district has no authority to overrule or abrogate the decision of another panel of the court, even though we are free to reach our own conclusion and depart with the analysis from another panel? I mean, I think at this point it's sort of a... I don't want to say a game of semantics, but I think it is. I mean, if this Court issues a decision that says Heritage was incorrectly decided or shouldn't have worked out that way or any number of things, any other way that this Court could phrase it, that would be one decision from this Court that's the most recent decision in time. So a person looking at the universe of the 6303 statute under the vehicle code would have Heritage and this Court's decision here in Smith. While we've spent a lot of time on it, I suggest that a reasonable person, reasonably prudent lawyer would look at this and say, this is the 2nd District's most recent pronouncement, but I think if you really research it, we cannot technically overrule another panel of equal authority. Let's not parse words upon that because there's bigger issues here. Well, at the very least then, I would put it this way. I think it's incumbent upon this Court, having the opportunity to consider the merits of Heritage, to take a step in the opposite direction, whatever we want to call that. Well, let me ask you this question. I mean, the defendant raises a good point in his brief that this problem, to the degree that the majority in Heritage went wrong, their mis-turn has now been corrected by the Illinois General Assembly because they've amended the law, and I believe now that law has now taken effect, correct? Yes, it has, Your Honor. So what is the rationale for us addressing the merits of the issue when it's been corrected already by the Illinois General Assembly? Is there a pool of cases, or are there a lot of cases out there that have been affected by Heritage? There are, Your Honor, yes. After Heritage was decided, I actually took over that case in front of the Illinois Supreme Court. The Supreme Court, of course, denied the PLA, but we did a motion to reconsider the PLA where we obtained affidavits from the state's attorneys of the eight largest counties in Illinois, each of them listed approximately, for the larger counties, it was upwards of two dozen in DuPage County alone. I believe it was somewhere around 75, 80 cases that were directly impacted by the decision in Heritage. And Judge Barsani, in ruling on the motion to reconsider here, said, I encourage the appellate court to take a look at it, maybe the Supreme Court will take it, correct? I think it was Judge Sheldon, yeah. Judge Sheldon. Yes. He said he'd be fine with either a felony or a misdemeanor, but he had to follow Heritage. Yeah, and I don't think there was anything per se incorrect, obviously, about the action that Judge Sheldon took. I do think, as a matter of procedure, though, to amend the charging instrument without the state's acquiescence infringed upon the state's authority to prosecute the case. And then tell us, we said, our court said that that action by the court, reducing it from a felony to a misdemeanor is tantamount to a dismissal, and we can't reach the merits. Yes, but I mean, let me, I think that's obviously certainly a very good point. Let me put it this way, just as a matter of, just to show this court that I at least have a sense of realism about how this would work. I mean, do you want us to take additional? Come on. I would not ask you to assume facts, not evidence, but let me at least try and put it this way. I think the trial court was incorrect in doing what it did. That said, I don't think that the result would be any different had the state gone through a trial, gone to a sentencing hearing. Clearly, the defendant would have been sentenced to a misdemeanor. It would have been void for the defendant to be sentenced to a felony under the circumstances. But that is a sentencing issue. I mean, this court was very clear in bar one about the difference between using an enhancement as an element of the offense versus as a sentencing factor. There's no distinction between 6303 DWLR and an 11501 DUI for that sentence. You alluded to the legislature's obviously changing the statute and regarding the issue. How do you read that action, the legislature's amendment section? How do you read that? I see it as the legislature clarifying something that was, in my mind, clear all along. Well, what about the argument, I'm sure your opponent may make, it's void. Isn't the action of the legislature sort of a tacit acknowledgment that Heritage was correct because now they've chosen to amend the law in light of Heritage? I don't think so. I mean, it's not as though if one looks at the committee debates or the floor debates, rather, over the legislation, it's not as though the General Assembly was saying, finally, the appellate court clarified our intent and now we realize that this is a problem and we have to pass this legislation. It was all along, this is what we mean by revoke. I think that's clear when one studies the number of cases that were surveyed in the dissent in Heritage, not mentioning the offering justice. I think it's very clear that when we use the term revocation in Illinois as practitioners of the law, as people who are custodians of the legal system, that it has always been imbued with that sense that revocation, while being a singular event, can occur any number of times without somebody's privileges being reinstated in the interim. I don't think that the Heritage majority's interpretation was correct because I believe, at least with respect to the vehicle code, the word revocation is clearly a term of art. And with regard to whether or not we follow Heritage, convince us, besides just talking about the dissent in Heritage, convince us that that ruling was either poorly reasoned or leads to absurd results. I would argue that it did both. First, I think it was poorly reasoned because it failed to construe the word revocation in harmony with other sections of the vehicle code that talk about revocations and suspensions. I think, at least in the brief I pointed out, that this court had dealt with a situation before talking about repeated incarceration under the Adoption Act. And I think incarceration is a perfect analogy. A person may, in the practical sense, have only one body to surrender to the state. But you can commit an offense, be incarcerated, and while incarcerated, commit yet another offense, and be incarcerated on that offense. Thus, you may have only been taken into custody one unique time in the sense that you've been taken out of the normal world where you have freedom, put into a correctional facility or a county jail. And so, yes, from one standpoint, there was only one event of incarceration. But in the technical sense, you were incarcerated multiple times. I think the same is certainly true. I think it's more evident with revocations and defendant's driver's licenses. So I think, first, Heritage is poorly reasoned because it just overlooks the use of the word revocation in the vehicle code, the practical way in which it's used, the near 30 years of appellate and Supreme Court history that discuss multiple revocations. Anyway, Section 6-205A doesn't place, by its language, any limitation on the number of revocations, does it? No, in my opinion, it does not. I don't know. Well, I don't believe it does. What do you make of the defendant's argument that the indictment in this case could have only been secured through perjured testimony before the grand jury? Did they raise that argument below? No, they did not. How about the substance of the argument? The substance of the argument wasn't raised below either. I mean, it appeared for the first time in the defendant's brief on appeal. I personally, let me put it this way. I think in order to accuse an assistant state's attorney of perjury in front of the grand jury without even having the grand jury transcript speaks to the weakness of the argument in the first place. In any event, I suspect that the defendant will argue that, while they weren't saying that the state necessarily had committed perjury, at least the way the defendant looks at it, the state must have somehow misled the grand jury by speaking of the defendant's DUIs and using that as a basis to secure the indictment. To the extent that that's the defendant's argument, I would have to say that there was nothing misleading about it because at that point in time, I did supplement the record with the grand jury transcript, but I don't think it matters. I mean, you can think about it in the abstract. The state presented a typical 6303 recidivist case to the grand jury. I mean, there was no nuance to it. There was no flash. There was nothing misleading about it. It was this defendant's license had been revoked for multiple reasons. One of them happened, well, several of them happened to be DUI, but at least one of them happened to be DUI, and that is considered to be the basis for revocation at the time the state presented that evidence to the grand jury. Because the state in the indictment alleged that that was the revocation or the order of revocation that they were relying upon to enhance the punishment. That is correct. You could have chosen another basis to enhance just the fact that they had multiple DWLRs, but the state chose this revocation for DUI. That's correct. But I think the way in which at least subsections, I believe, D1 through, I thought it was D5, but it might even go further than that. I think D5 is the class 1 and 6 might be the X. I think the state could have elected to choose any of those, any revocation in that sequence that was for DUI provides the proper predicate for enhancing the current offense. As long as it had not been removed from his abstract. Yes. Administratively. Yes. Yes. I think that it was the interpretation of the vehicle code that everybody had prior to Herrich, which is why I think Herrich is an anomaly. Going back for a second, we were talking about, a little bit before, about why I thought maybe that Herrich was wrongly decided. I think that Herrich was wrongly decided because it, in effect, it changed the word revocation. It adopted an unreasonable construction of a statute, and it did all of that without ever considering the evils that the statute was designed to remedy. I think whenever, obviously, when we look at a statute, there's more than just the literal question of what do these words mean and what is the most narrow result that they command. I think there also has to be a bit of a sense of realism about it, and I find that to be lacking in the majority's opinion. Do we consider policy implications when we make a decision? I don't know. It's certainly not dispositive, but I think it's certainly important to consider them, yes. Isn't one of our primary duties when there's a contest about the meaning of a statute to examine not just the language of the statute, but the way our cases have interpreted to determine what the legislative intent was? Absolutely. So in a sense, there is a policy consideration, at least in respect to what was the intent, and the intent was to punish recidivist defenders more harshly than first- or second-time offenders, correct? Oh, clearly, yes. And the result here is that multiple offenders like this defendant with 15 BWLRs, if we follow heritage, he faces a Class A misdemeanor. Correct. Correct. Going back to that for a second, at one point I said something about me being reasonable, and I just kind of want to finish that up for a second. It was not lost on us. We're waiting to hear that. Good. I think the real-world effect of all of this is the case goes back to the trial court for the amendments to be stricken. Heritage may be the law of the land, it may not be, but for the facts of this case, unless the defendant makes an election, it is, and it's going to control the outcome of that case unless this court decides to go a different direction. That being said, if this court leaves heritage in place, what would happen is the defendant goes to trial, assuming that he still wants to go to trial. The defendant goes to trial. It may look like a felony trial, but at most he can only get a misdemeanor sentence. I don't think that fact is lost on anybody in the state's attorney's office. I would hope that it's not lost on the defendant or the trial court judge. I know I've said in another case that is procedurally almost identical to this one in front of this court that the nature of prosecutorial discretion is such that if the state wants to go through a felony trial for what can only be at most misdemeanor consequences, that is essentially the state's prerogative, unless and until the state chooses to acquiesce to an amendment in the charging instrument. That didn't happen in this case. The state didn't even really have an opportunity to agree to the amendment to the charge. I think that's because of the procedure that the trial court adopted. I think that when you grant in part and deny in part a 114-88 motion to dismiss a charge, you are changing the nature of that statute. You are necessarily changing the dynamics of the state's ability to charge the defendant and consequently undermining the state's freedom to prosecute the case. So for all of those reasons, I would ask this court to reverse the decision of the trial court and to, in whatever language this court finds appropriate. I've got one other question. Yes, ma'am. If the state is going to proceed on presumably a Class II, what do they have to allege? What? Class II DWL. In the charging instrument, at least 15 prior revocations, presumably I would say one of them would have to certainly be either a DUI, an accident involving, I think it's, I thought it was, it's injury, it's not great bodily harm, so it's an accident involving injury or death or statutory summary suspension. And here it was statutory summary suspension that had never been removed. Yes. But my point is you do agree the state must allege those. In the charging instrument, sure. And that's for notice, basically. Right. And also for, I think, Section 111.5 that we have to put the prior, we have to put all priors in the charging instrument. And you do agree that at trial you would simply prove the defendant was driving and his license was revoked, period. It doesn't matter. And then at sentencing you would prove up the issues with respect to making it a Class II. Absolutely. It doesn't matter if it's the defendant's first DWOR or his 99th DWOR. I mean, from the trial standpoint, all DWOR trials look the same. Okay. To the extent that the Heritage Court said that there is a distinct element of the offense aggravated DWOR, I get that. From sentencing the defendant could raise this challenge again. Right. As this Court said in Urofsky, I believe Justice Jorgenson was the author, the abstract is prima facie. I was the attorney. She was the author. But, no, that's absolutely correct. And that would be the appropriate time for the defendant to start challenging his priors. But you are not getting into a question of what was proper to allege. No, not at all. I mean, it may turn out ultimately. So it would affect really what the trial judge was saying, is sort of putting the cart before the horse and saying, well, when we get to sentencing, this isn't going to be relevant because of Heritage. Yeah, which is pretty much exactly like Barwon. Judicial notice aspect of it aside, I think whenever you start looking beyond the four corners of the indictment and asking what these dates mean and what offense are they tied to, you're necessarily second-guessing the charging instrument beyond the four corners. I mean, it may turn out ultimately. Would it also be, then, your policy position that at a motion to dismiss, you cannot get into whether or not the State can establish their sentencing or their factors in aggravation to elevate what appears, driving while revoked, a Class A to a Class II? In other words, that was kind of a confusing question. My point is that you, at a motion to dismiss, your point is the trial judge must only look to see whether or not the defendant was driving allegations. Defendant was driving on a particular date and a particular place to establish venue, and that at that time, license was revoked. I think you'd also need, in addition to that, just because of 111.5 for the enhancements, I think you'd also have to look at the number of previous violations alleged, just to make sure that that's a sufficient number. But then now you're going into whether you have properly alleged a higher class. So your position is you do have to allege those. But the question is, what is the four corners of a motion to dismiss? Are you saying the defendant, if he's bringing a motion to dismiss a count where 14 priors are alleged, that he must say, I'm bringing a motion to dismiss a Class II felony? Or does he simply say, vague, broad motion to dismiss the indictment, count, whatever? Okay, in the course of that question, you had said, looking beyond the four corners of the motion to dismiss. Yeah. As a judge. Yeah. Okay. I just wasn't sure if that was going in a different direction. What's the parameters of a motion to dismiss, I guess, is what I'm asking. The state has to be missing an essential element of the offense. The Class II offense, the Class A offense. Excuse me. I think it's probably best to say that 114-1A motions are concerned with the essential elements of the offense. I think 111-5, though, imposes on the state the obligation to, I don't want to say, I think to at least properly allege the number of previous violations in order to not trigger the enhancement, but in order to adequately put the defendant on. I mean, if we had alleged he had committed the Class II, we charged him with D-5, but we only put 13 dates for revocation. Yes. I think that would be, I think that would probably, I don't know that that would necessarily be germane to the motion to dismiss for failure to state a charge or failure to state an offense. It would be an improper. What is the offense? The offense is DWOR. Class A? Okay. I really don't mean to be splitting hairs with you, but I think if we're going to go beyond just answering the simple front-end question here, what are you asking us to do? What exactly is it that the trial judge should or should not have done, or perhaps was the motion so broad that it allowed the trial judge to look at that? No, the motion was clearly, in my mind, I thought the motion was fairly narrow. I thought the written motion at least was narrow. Originally, the trial court granted the motion to dismiss and then amended that to reflect that he was not dismissing the case. He was amending it from a Class II to a Class A misdemeanor. Yes. Which is exactly what happened in Tellez. Yes. Where the court said, I'm not dismissing the complaint. I'm saying it's not a felony. It's not a class-truth felony. It's a business offense because of the language. Correct. Okay. Yes, I agree with that insofar as we're talking about the amendment to the charging instrument. But I thought that, and maybe I'm wrong, but I thought that Justice Jorgensen's question sort of went to what happens if the state improperly alleges the number of priors? All right. Let's just take an example. You allege, you make a mistake, and you just, instead of 14, you put 12, 10, whatever. Defendant brings a motion to dismiss. Are we saying that the defendant must say, I am bringing a motion to dismiss this count as an improperly charged Class II? Okay. Or does it sit and it alleges a Class A, we proceed to trial on the element you have to prove at trial, and then when you get to sentencing, you say, hey, it's a Class A because you way back when. Right. And you're going to say, oh, it was just a typo. No, no, no. But the defendant would have waived his right to have brought that motion to dismiss. You see what I'm saying? Yeah. At what point does the defendant then challenge that? You're sort of asking me, though, how does the defendant fully capitalize on a formal defect in the indictment that can be? Let's, you know, formal defect. Is it a formal defect? It fails to state a cause of action for a Class II. I see what you mean. Okay. I don't want to split hairs with you. I just use it because it's a very clear example. Let me put it this way, then, in the civil context. You would not bounce a plaintiff's lawsuit. You would not dismiss a plaintiff's lawsuit for a mistake in the addendum clause. You wouldn't say that the plaintiff failed to state a cause of action because he's asking for relief that he simply can't get. No, but if he asks for, for example, less than $50,000 and he's filed a law claim, you betcha it's going to get bounced down. Let's stay out of civil court. Okay, fair enough. You see what I'm trying to say? No, I do, I do. I don't want to fix one issue. I get that. But create another. At what point, then, is it incumbent on the defense to challenge that this indictment does not allege a Class II? I think, okay. Is it up front or is it a sentencing? Okay. I think the mistake here, then, not the mistake, but the way in which you frame the hypothetical is the state's cause of action for this particular level of offense. And I don't think that's it. I think under 114.1a, it's failure to state an offense, to charge states an offense. It may improperly allege a Class II. We may have put 13 and not 14. Right. I believe that's subject to correction as a formal defect, which can be done at any time. If the defendant points it out first and the state goes, we missed a date, the state, I believe, would have the opportunity to make that correction. That's sentencing. I don't think it matters. What does it matter if the state doesn't? Well, yes, the defendant has to have notice, and he had notice. You properly alleged it. You list all the dates. But he didn't. You only alleged 13, 12. He didn't have proper notice for a Class II. Okay. To the extent that the defendant points that out, I don't think that he gets a windfall. He points it out at sentencing. He says, you know, it's not a Class II. That's a good point. If it goes until sentencing, certainly. That's my point. So, again, what are the parameters of them? Are we going to say that, look, if it doesn't allege a Class II and nobody raises it, then that's what you're stuck with when we get to sentencing? Because I didn't have notice that, based on priors, you were going to try to sentence me as a Class II defendant. I don't want an academic conversation, but in this case, you alleged 21 convictions for DWLR. Yes. And that's in the body of the indictment. And then the trial court hand wrote in after the motion made it a Class A misdemeanor where the indictment returned by the grand jury, it said Class II felony. So that's, okay. I just want to make sure that's. That's what happened here. I still think that's a little different than what is. It is. But you're right. I mean, the facts here are not close. But, again, you're, you know, part of your initial argument as to why we even get to the merits is to look at policy and look at these things. Sure. And this comes to us in the guise of a motion to dismiss. So, ergo my question. But, you know, given the facts here, Justice Burkett's right, it is somewhat academic. Let me see if I can put it in a different way. I don't think that there were, because the standard really would be, in terms of the defendant not receiving proper notice, whether or not he was prejudiced by that. I think a defendant who's admonished that he could potentially receive a Class II sentence, whatever the reason is, he doesn't get a Class II. He gets something lower than it. As long as it's lower than what he was admonished about, it certainly adheres to his benefit. Was this the first time he faced a felony? No. No. Not for 6303? No. Definitely wasn't his first time for a felony traffic offense, either. But I don't think there's a danger in over-admonishing the defendant about Class II penalties when, at worst, in the post-heritage world, he's looking at a 4A. If it were charged as a Class IV, and then all of a sudden everybody started throwing in additional dates and trying to bump it up from a Class II, and then the state tried to make some sort of squirrely argument that, well, what we really meant was a Class II all along, different story. Tough, right. Right. Okay. Not allowed, so. All right. Anything else? No. Okay. You'll have a chance to reply. Thank you. May it please the Court. Counsel, my name is Jamie Montgomery. I represent Mr. George Smith on behalf of the Office of the State Appellate Defender. I will address a couple of points that were made during counsel's argument. I certainly agree with the argument that there's really no need for this Court to reach the merits of this case, given that the legislature has decided this for us. I believe that— The judge's, the trial court's comment that he wanted us to look at the argument and the merits of it. During the motion to reconsider, the judge's comment then said, I encourage the appellate court to take a look at this, and maybe the Supreme Court will take it. Would you agree that, under Tellez and other cases, that where a motion to dismiss results substantively in the reduction of the charge from a felony to a misdemeanor under 604A, the state has a right to appeal, and this Court has the discretion to reach the merits? Sure. So why should we not reach the merits if we disagree with Heritage? Well, I don't think that— Or if we agree with Heritage? I don't think there's any need for this. Well, I guess I should clarify my statement. I don't think there's any need for this Court to, as the state initially invited this Court to do, abrogate Heritage. I think it's clear we can't do that. Okay. I think that the legislature has, in the new version of 303, has adopted the reasoning in your dissent, Justice Burkett, that there certainly are re-revocations. They also, however, clarified that under D-5, the revocation—the 14 revocations have to be for those stated reasons in the statute. You can't just have, as Mr. Smith has here, he certainly has 21 prior DWLRs. Nobody can dispute that. However— Twenty-one convictions for DWLRs. Right. Under the statute, though, he has to have these related to a DUI or— Let me—I want to switch gears on you a little bit. I asked the question about the allegation that you made, which was not raised below, that the state must have presented perjured testimony to the grand jury. How do you respond to the argument that that position is not made in good faith? There's no evidence at all to support that contention, especially in light of the fact that this case was indicted four months before the heritage opinion came down. How do you respond to that argument? Respectfully, Your Honor, I don't believe it was made in bad faith. I don't believe—the actual argument was not that the state committed perjury. That was a hyperbolic response by the state in their reply brief. The argument in our brief— I've read the brief. I understand. The allegation is that it must have been— The allegation was that it was— Must have been perjury. No, the allegation was that it was—inaccurate information was presented. As the court— Did you use the term—did you use the term perjury in your brief? No. I stated as a—I've laid out what the law is in terms of due process violations at grand jury. I acknowledge that these options are deliberately or intentionally misleading the jury. Using known perjure or false testimony, that's where the word perjury came in. And also, the third option, which is presenting other deceptive or inaccurate information. We then went on to argue that the state must have presented inaccurate information to the jury. And I believe that, you know, we as the appellee are under no obligation to supply the record. That's the appellant's job. You have an obligation as a litigant to search the record to determine whether or not your argument— You're familiar with Rule 375, correct? Of course, Your Honor. They have to be made in good faith. And the argument was made in good faith. What was the misleading testimony that was presented to the grand jury to secure this indictment? On page 5 of the grand jury testimony, and did this— You checked the status of the defendant's license and learned that his driver's license was currently revoked for a prior DUI offense. Yes. At the time, with Heritage controlling. I understand that Heritage came out after, so let me— Heritage was not controlling at the time that that indictment was returned. At the time that Heritage came—when this happened, that may have been what the state—what they believed, but we later determined—but it was later discovered after Heritage came out that that was an inaccurate statement of the law. And no one is arguing that the state did this deliberately or intentionally, but the fact of the matter is this was inaccurate information. And I believe that the argument that this was inaccurate was not made in bad faith because with the knowledge of Heritage, we could argue, based on the face of the indictment, that the jury could not have returned an indictment on this had they been told that the defendant—his license was not revoked due to a prior DUI. Counsel, let me ask you this. If we reach the merits of the case and we revisit that decision, the Heritage decision, I want to ask you about the implications, the present implications of Heritage. Because I understand this. If a driver's license is revoked and never reissued, what would be the incentive for the driver to ever comply with the chemical testing provisions? And if they didn't comply with the chemical testing provisions, they could actually even apply for a new license, but they would not, notwithstanding that somebody similarly situated would not be able to drive. So how does that—does that sound like a reasonable interpretation of legislative intent? Could you repeat the first part? If somebody's license is revoked and never reissued and you have summary suspensions cumulative with no effect, that person then, knowing that, would have no incentive to ever take a test, correct? Knowing that they could never get their license back? Never license affected, right? Correct. Okay. And then they could actually reapply for a new license, could they not? And somebody else's license was subject to the statute of temporary suspension law would not be able to. Isn't that all true? Does that follow from Heritage? I'm not sure that it does, Your Honor. I'm not clear. I suggest that it does. How do you respond? Again, in Heritage, the majority did not discuss the points that I raised in the dissent in that case, but you have the opportunity now to tell us why the dissent in Heritage is wrong. Especially look at the case of Bloomberg, for example, and Bloomberg involved a different section of the code, but there's a discussion of the General Assembly at one point in time using the term original revocation, then removing it, then putting it back in. Just looking at the language of the statute itself, doesn't the use of the term original revocation in other provisions of the code demonstrate that the General Assembly always meant that multiple revocations would have an effect? I believe that there's... I mean, just confine your comment to address the analysis in Bloomberg that the language of the statute, as the appellate court reached that issue in Bloomberg, decided that the defendant was eligible for a felony despite the fact that the term original had been used in an earlier provision. How do you respond to that argument? About Bloomberg? About the definition within the statute itself, not even going to the other provisions of the code, administrative or the criminal sections of the code, just what's in the section itself. The term original revocation is used within 6303 and other sections. And then not in the others? I agree that that's correct. Well, how do you... So for D-5 it's different than it is for the other provision that I'm talking about? D-5 is different than... a revocation for D-5 is different than a revocation for the other provision? Well, I believe that with the amendments the legislature has made, we now know that you were correct, that there can be re-revocation. However, the amendments the legislature made to D-5 indicate that the priors must be related to DUIs as well. So a person like... Mr. Smith is not unique in that he revoked... his license got revoked and he kept driving. We see that all the time. However, he is unique in that he has this many prior DWLRs without DUI beforehand. I mean, his DUI occurred in 2010. So the vast majority of his priors occurred before D-5 would have even applied to him. So he's a scofflaw before he became a drunk driver? Yes. And I believe that there is... I can't deny that, Your Honor. I believe that what the legislature intended with the statute was to punish repeat DWLR offenders more harshly. I believe they also intended to punish DWLR offenders who are revoked due to a DUI or reckless homicide or statutory suspension. The intent was to punish those repeat offenders more harshly than people who are revoked just for not paying a traffic ticket or not paying their child support. I think the legislature is acknowledging that it's worse if you have a revoked license due to DUI. Do you agree that in Heritage, at least with respect to the comment by the majority that D-5 creates a separate offense, that that was in error? That it's a sentencing provision under the Supreme Court's decision in Nunez? I think that that was a statement made in dicta. Whether it was entirely accurate, I don't think it's true. And it reflects upon, especially in light of Justice Jorgenson's questions, is it something that even should be addressed in a motion to dismiss if it's only a sentencing provision as opposed to a substantive element, which is what the Heritage majority said? Well, I think that there is something to be said for a defendant being... In this situation, if everyone in the courtroom knows that the state isn't going to be able to get a Class 2, why not take care of it now? Why waste everyone's time? I understand the state's position that it's the prosecutor's prerogative if they want to have a felony trial. But the defendant also has a right to not, under fundamental fairness, to not go through the rigors of trial. And he has a right to know what he's facing because he may be facing probation or incarceration for up to seven years, correct? Correct. And what the defendant is facing might play a role in whether or not the defendant would choose to negotiate for a plea. If he's only facing a misdemeanor, he might not even want... Or plead blind. I said, or plead blind. Why did the court reduce it to a Class A? He could have just reduced it to, I believe, a Class 4 for three or more DWLRs. Why did they reduce it to a Class A? Did anybody catch that? I didn't catch it until you just said that, Your Honor, so I couldn't... He clearly could have just reduced it to a Class 4 felony. Maybe we wouldn't be here, right? Maybe. And maybe he did it so that we would be here. I can't tell you what's in Judge Sheldon's... I think the second remark is correct because he encouraged us to take the case. Correct. I also, getting back to what we were just talking about, Justice Jorgenson is absolutely correct that the defendant has to challenge this at the earliest possible moment. If he had waited until sentencing, and in the situation she was talking about where if there had only been 12 priors alleged, the state would be jumping up and down alleging that he had laid in wait and that he had forfeited the argument. And I don't know that that would be incorrect. So we're in an odd position here because we have this case law that says that this is not an element of the offense. It has to be proven at trial. However, we also know that the state has to prove these things. And when we have an offense that is based on, you know, the misdemeanor is if you have this many and the felony is this many, we get into this weird position where it's hard to know what has to be proven when. And I think for purposes of judicial economy, it makes sense for the defendant to challenge it as soon as he possibly can and deal with these issues as soon as they arise. Would you agree that, at least with respect to the majority's opinion, that in construing the statutes, we're not rigidly bound if the interpretation that we're asked to make is inconsistent with the legislative intent? That in that situation, we have the authority to say that the term revocation doesn't mean the revocation, it means a revocation as the court did in Tellez by inserting a word? I'm sorry? Do you remember the state cited Tellez in the brief? Correct, yes. And in Tellez, this court said that we have the authority to read into the statute language omitted through legislative oversight, which is the point, I think, of the dissent in heritage that it was just a legislative oversight and the only way to correct it in light of the other provisions of the code is to read it as any revocation than an effect. Correct? I mean, am I wrong about the way we should look at a statute? There is case law that says that you should read into it when there is legislative oversight. There's also case law that says that it's not this court's job to do the legislature's job. Isn't the correction that was made by the General Assembly clear evidence that they only amended that provision and not the rest of the provisions of the code and that they are all now in harmony? They amended what provision? That any revocation, that they've said any revocation than an effect. It's not a single revocation. All revocations that are entered by the Secretary of State have effect. Yes, they did say that. They also added to D-5, though, that the revocation that, here, Mr. Smith was revoked at the time due to his prior DUI. He's still not going to be eligible, though, under D-5 because his priors are not due to a DUI or any of the other reasons. And the legislature, in amending it, they adopted your language, but they also adopted some of the reasoning from the majority that the revocations, you know, the majority said that the original revocation had to be for a DUI. Well, the legislature didn't go that far, but they did say that we are punishing people who have prior DUI-related or 401, 501.1, and reckless homicide. I'm using DUI broadly. The legislature amended it to include that the number of priors that we're going to count have to all be related to a DUI. So they didn't go completely with what you said, but they also didn't go completely with what the majority said. And so I don't think that the majority, I don't believe that the legislature has said that they completely disagree with what the Heritage Court majority held. They also didn't completely disagree with it. They also didn't completely agree with it, which, in our separation of powers, is exactly what's supposed to happen. This court, the legislature wrote a law. This court interpreted it. The legislature agreed and disagreed and acted accordingly. And because of that, there's no need to upset stare decisis and aggregate or... Let me ask you this. Just based on common sense and the number of DWLRs and DUIs that occur in the state every year, there must be a substantial number of cases that are out there that are still pending, not just criminal cases but forfeiture cases, administrative cases that are before the Secretary of State where similar arguments are being made that you're making here, correct? Correct. So if we leave Heritage alone and we, for example, just say this issue is not right, shouldn't have been considered, send it back, wouldn't we be doing all those litigants a disservice? Well, I think that... I mean, all those litigants are still going to be in the position of, not all, but the majority of them are going to be in the position of getting to elect under which statute they want to be tried. So I don't know that there's going to be much that a new decision from this court saying Heritage was wrong. How about vehicles that are seized and there are Article 36 forfeitures filed and the defendant comes in and says, I was revoked for a felony unrelated to DUI, therefore you can't see my vehicle. I know I've been prosecuted for DUI multiple times and I've driven on a revoked license, but the state can't have my vehicle. Do you know what I'm talking about? Why wouldn't they be able to have the vehicle? Because under Heritage, the defendant was not revoked for DUI. But in your situation, the defendant has several prior DUIs and is revoked. For some other related reason. Some original reason. Well, I think it's possible that even if that defendant gets his car back, the state's going to get their hands on it again pretty soon. Because he's likely to reoffend. That's the nature of DWLR, Your Honor. Fortunately. If there are no further questions. Very briefly, Your Honors. I just wanted to say a quick word about the state's argument that this court should address Heritage and the defendant's perjury argument. I think they're kind of both grounded in the parties' respective positions that the statute was clear all along. So the state argues that the statute was clear in the sense that the legislature clarified it into A10. And that's been our position all along, that the statute was clear in the first place. I think with the defendant's arguing that, I didn't quite see the defendant's perjury claim this way before. But I think what the defendant's saying is that because his interpretation of the statute is the way in which he views the statute as being clear all along, that's why he makes the grand jury claim. So I think it does kind of dovetail into the parties' respective positions with respect to the statute. That said, it is very difficult to escape the perjury allegation given not only the language in the defendant's brief, but the cases that are cited. Namely, Oliver, the Second District case of Molloy v. Hogan. I'm sorry, Hogan v. United States and People v. DiVincenzo. Whether or not the defendant is actually genuinely making a perjury argument or whether or not that argument is just in service of the defendant's statutory interpretation, I think that's a matter for this court to decide. I don't think it's essential to the resolution of this case, though. The only thing that I would point out, though, with respect to the defendant's interpretation of 6303 before Heritage was issued, is Justice Burkett's comment in paragraph 16 of the dissent that no court decision anywhere in the country prior to Heritage stood for the proposition that a license could not be re-revoked. I think that speaks volumes about what a radical departure the Heritage majority's interpretation of the statute basically was. In short, I think, with respect to Justice Burkett's question about whether or not the trial court could have reduced it to a Class IV felony versus a Class A misdemeanor, I had not thought about that before. I can tell you this court wants to take notice of its own docket. There are two other cases that are almost identical to this one pending in front of this court right now, though they were filed about six months after this case. But in all of the cases that I have seen, or in all the cases in which I have spoken to state's attorneys in respective counties, trial court judges are dropping them down to Class A misdemeanors because of the assumption that as long as the defendant's first revocation, his original revocation was not for one of the four triggering offenses, DUI, accident with injuries, statutory summary suspension, or accident with death, everyone is looking at it as though it is the defendant's first DWLR. An argument as to whether or not we can cobble together three predicate offenses and turn it into a Class IV felony, courts are not even considering that. And so we now have, post-Heritage, something else that I think is problematic is this new vogue of defendants raising motions to dismiss and trial courts granting them in part and denying them in part. And I would urge this court to take a stance against that type of procedure. It's contrary to what this court said in Tellez. It's contrary to what this court said in Bar One. It's unrecognizable in the law following Illinois' Code of Criminal Procedure. And as a result, I would urge this court to take a strong stance against it. If there are no further questions. I have one last question. Assuming we accept your argument, we reverse based on what we would call an improper ruling on the motion to dismiss. Case goes back. We strike the judge's handwritten language. It goes back to the original Class II as it was filed 14 prior DWLR convictions. Now, this defendant can elect to proceed under the new D-5. What do you now have to allege? Let me sort of separate this out for a second. There are two groups of amendments that were effectuated by the most recent piece of legislation. One was to create a 10, which I have argued is consistent with the way in which the statute was supposed to be read all along. The entire section affecting, or the entire portion of the legislation, pretty much 90% of the legislation, which affects all the subsection D enhancements, all the subsection D felony provisions, narrowed those provisions significantly. It changed the language in all of them. I don't think that was part of the heritage give and take. The legislation, if you look back through the legislative history, the legislation started as a change to those sentencing provisions. So for whatever reason, the General Assembly wanted to narrow those sentencing provisions to make it so that 6303s that would trigger a felony offense had to be related to those four offenses, and those four offenses only. I don't think that in any way relates to the prior, to the... D-5. I'm sorry, what's that? D-5. To D-5, or really D-1 through 6, or I think it's maybe D-1 through 6.5, but all of the felony enhancements, the language changed. That's unrelated to heritage, in my opinion. I understand what the defendant is saying, but it's just one of these things is not like the other. A-10 speaks directly to heritage. I think in A-10, the legislature was clarifying its original intent. I would argue that it didn't need to in the first place. So for those reasons, we would ask the court to reverse the trial court.